# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
       **Plaintiff,**

   v.                                                Case No. 07-CR-322

**EDDIE TAYLOR**
       **Defendant.**

## SENTENCING MEMORANDUM

Defendant Eddie Taylor sold crack cocaine to a confidential informant ("CI") on three occasions in November 2007, in amounts ranging from 28 to 44 grams. The government subsequently obtained a warrant to search defendant's residence, pursuant to which agents seized an additional 29 grams of crack and 216 grams of powder cocaine, along with a firearm. The government charged defendant with possession with intent to deliver 5+ grams of crack based on the amount seized from the home, see 21 U.S.C. §§ 841(a)(1) & (b)(1)(B), and he pleaded guilty to the charge. In sentencing defendant, I first calculated the advisory guideline range, then determined the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See Gall v. United States, 128 S. Ct. 586, 596 (2007); United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007). This memorandum contains written reasons for my determinations.

### I. GUIDELINES

The parties agreed that defendant sold or possessed a total of 105 grams of crack cocaine and 216 grams of powder cocaine in this matter, producing a base offense level of 30 under U.S.S.G. § 2D1.1(c) & cmt. n.10(D). The pre-sentence report recommended a 2 level enhancement for possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1), which

defendant opposed. The application note to this guideline explains that this "adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." U.S.S.G. § 2D1.1 cmt. n.3. Consistent with this note, the Seventh Circuit has held that in order for the enhancement to apply the government must first show by a preponderance of the evidence that a gun was possessed during the commission of the offense or relevant conduct. If the government satisfies this standard, the burden shifts to the defendant to show that it was clearly improbable that the gun was connected to the offense. See, e.g., United States v. Womack, 496 F.3d 791, 797-98 (7th Cir. 2007).

The government met its initial burden in this case. On November 27, 2007, the CI visited defendant's home and purchased a quantity of crack cocaine. Later that day, agents executed a warrant at the home, seizing a pistol and two boxes of ammunition from defendant's bedroom. Defendant claimed that his girlfriend bought the gun for protection, but one may possess a firearm without owning it, see United States v. Hubbard, 61 F.3d 1261, 1272 (7th Cir. 1995) ("[T]he fact that Hubbard did not own the guns does not vitiate his possession of them[.]"); United States v. Boykin, 986 F.2d 270, 274 (8th Cir. 1993) (stating that "ownership is irrelevant to the issue of possession"), and defendant conceded that he had access to this weapon, see United States v. Kitchen, 57 F.3d 516, 520-21 (7th Cir. 1995) (finding sufficient evidence of constructive possession where firearm was found in bedroom the defendant shared with his girlfriend). Therefore, I found the government's evidence sufficient to show possession. See United States v. Franklin, 896 F.2d 1063, 1065-66 (7th Cir. 1990) (collecting cases). The burden thus shifted to defendant to show that it was clearly improbable that the

2

gun was connected to the offense.

Defendant tried to analogize his case to the example in application note 3, but the attempt failed. The weapon involved here was not an unloaded hunting rifle in a closet; it was a pistol concealed under defendant's mattress; agents also found two boxes of ammunition in the bedroom. Although the crack and powder cocaine agents also recovered that day was found in the dining room, I concluded that the most likely explanation for the presence of the gun in the bedroom was to offer a measure of protection, not just for the house and its occupants, but also for defendant's drug dealing out of the residence. The evidence showed that defendant made three separate sales to the CI from this residence. This was not a case where defendant happened to be arrested at his home, and happened to have a gun there. This home was the site of his drug trafficking. Further, while the gun was not seized from the same room as the drugs, it was readily accessible to defendant. See, e.g., United States v. Garcia, 925 F.2d 170, 173-74 (7th Cir. 1991) (applying the enhancement where the defendant secreted a gun between couch cushions in the house he used to deal drugs, and collecting cases applying the enhancement under similar circumstances, including United States v. Green, 889 F.2d 187, 188-89 (8th Cir. 1989), where the court held that the application note 3 exception did not apply because the firearm was not a hunting weapon and was kept at a residence which was the principal base of the drug operation, even though the gun was an unloaded, single shot .22 pistol); see also United States v. Nunez, 958 F.2d 196, 199-200 (7th Cir. 1992) (upholding the enhancement where the guns were found in the same house as cocaine); United States v. Valencia, 913 F.2d 378, 384-85 (7th Cir. 1990) (upholding the enhancement even though the guns were not easily accessible, one being in the closet and the other in a drawer, and no weapons were displayed during the negotiations for the purchase of

3

drugs).

Relying on cases from other circuits, defendant claimed that the government had to show a connection between the gun and the drug offense. But the Seventh Circuit requires no "nexus between the weapon and the crime; it is enough that it was possessed at the time of the offense." United States v. Banks, 987 F.2d 463, 467 (7th Cir. 1993). Therefore, this argument failed.

Under all the circumstances, I found that the government had demonstrated by a preponderance of the evidence that this enhancement applied. I therefore overruled the objection and, after granting a 3 level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, adopted a final offense level of 29. Coupled with defendant's undisputed criminal history category of III, level 29 produces an imprisonment range of 108-135 months.

## II. SENTENCE

### A. Section 3553(a)

The district court must in imposing the final sentence consider all of the factors set forth in § 3553(a). United States v. Harris, 490 F.3d 589, 593 (7th Cir. 2007), cert. denied, 128 S. Ct. 963 (2008). Those factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

4

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the advisory guideline range;
>
> (5) any pertinent policy statements issued by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The court must, after considering these factors, impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. 18 U.S.C. § 3553(a)(2). This statutory command is commonly known as the "parsimony provision," and it requires the district court to impose the least severe sanction required to achieve the four purposes of sentencing stated above. United States v. Santoya, 493 F. Supp. 2d 1075, 1077 (E.D. Wis. 2007); see also Kimbrough v. United States, 128 S. Ct. 558, 570 (2007) (characterizing the parsimony provision as the "overarching provision" of the statute).

While the district court must "give respectful consideration to the Guidelines" in determining a sufficient sentence, Kimbrough, 128 S. Ct. at 570, it may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007). Nor is the district court firmly bound by the policy determinations contained in the guidelines such as their disparate treatment of crack versus powder cocaine. See Kimbrough, 128 S. Ct. at 575. Rather, after accurately calculating the advisory range so that it can derive whatever insight the guidelines have to offer, the district court must make an independent determination

5

based on all of the § 3553(a) factors without any "thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007); see also United States v. Beier, 490 F.3d 572, 574 (7th Cir. 2007) (stating that § 3553(a) "does not attach weights to these factors, thus leaving the sentencing judge with enormous latitude").[1]

**B. Analysis**

**1. The Offense**

As indicated above, this case arose out of a series of controlled buys between defendant and a CI: 44 grams of crack on November 1, 2007, 28 grams on November 7, 2007, and 33 grams on November 27, 2007. Agents executed a warrant at defendant's residence after the final buy and seized 29 grams of crack and 216 grams of powder cocaine. Agents also seized a .22 pistol from defendant's bedroom, along with two boxes of .22 caliber ammunition. The government expended $800 in buy money on each of the three transactions, but recovered the $800 from the final buy during execution of the warrant.

**2. The Defendant**

Defendant was thirty years old, with a fairly significant record including convictions for resisting, marijuana possession, endangering safety, carrying a concealed weapon, obstructing an officer, selling fake crack, and possession of marijuana as a repeat offender. His mother reported that he had some anger issues, but she further stated that they maintained a good relationship and that he helped her with her health problems. His girlfriend of five years also made positive comments about him, stating that he was a good father to their child and tended

---

[1] The court may not, however, rely on the § 3553(a) factors to impose sentence below a minimum required by statute. See, e.g., United States v. Duncan, 479 F.3d 924, 930 (7th Cir.), cert. denied, 128 S. Ct. 189 (2007). In the present case, defendant faced a mandatory minimum of 60 months under 21 U.S.C. § 841(b)(1)(B).

6

to the home while she attended school.

Defendant admitted significant past use of marijuana and cocaine, but his screens on pre-trial release were negative until just before sentencing. He dropped out of school but later got his GED in state prison. His employment record was limited; he reported cutting hair for cash for the past three years. He appeared to be in need of vocational training, which I recommended to the Bureau of Prisons.

### 3. Guidelines and Purposes of Sentencing

The guidelines called for 108-135 months in this case, but that range was based on the guidelines' disparate treatment of crack versus powder cocaine. Even after the Sentencing Commission's recent amendment, the guidelines still provide for sentences in crack offenses up to five times longer than sentences for equal amounts of powder. See Kimbrough, 128 S. Ct. at 569. In this case, for instance, had defendant possessed only powder cocaine, his base offense level would have been 22 rather than 30, and his range 46-57 months rather than 108-135.

The Sentencing Commission has consistently criticized the disproportionately harsh sanctions required by the crack statutes and guidelines, see, e.g., United States v. Smith, 359 F. Supp. 2d 771, 777-81 (E.D. Wis. 2005) (discussing in detail the flaws identified in the 100:1 ratio between crack and powder cocaine), and the Supreme Court has held that, given this unjustified disparity, a district judge may conclude when sentencing a particular defendant that the crack/powder ratio contained in the guidelines "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." Kimbrough, 128 S. Ct. at 575; see also United States v. Jackson, 537 F. Supp. 2d 990, 993 (E.D. Wis. 2008). I found the guidelines' recommendation greater than necessary to achieve just punishment in this case.

7

I also found the range greater than necessary to satisfy the need to deter and protect the public. While defendant had a prior record, it consisted primarily of misdemeanors. He had no history of violence, and while officers found a firearm in this case, the record contained no evidence that he ever used the gun in any way. Nor did the record contain any suggestion of other harmful secondary effects on the community associated with the crime. Defendant appeared to be a relatively low level street dealer, not the type of person Congress likely had in mind when it set the harsh penalties for crack. Further, even the minimum sentence required by statute in this case resulted in defendant serving a sentence 2 ½ times longer than any previous term, thereby providing a sufficient deterrent. See United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) (explaining that the court should consider the length of any previous sentences the defendant has served in evaluating the need for specific deterrence).

Finally, I considered defendant's efforts to cooperate with the government, debriefing and attempting to engage in pro-active cooperation in the field. Although those efforts did not lead to other convictions (or produce a U.S.S.G. § 5K1.1 motion), I considered them under § 3553(a). See, e.g., United States v. Arceo, 535 F.3d 679, 688 (7th Cir. 2008) (stating that the district court may rely on cooperation as a basis for going below the guidelines); United States v. Fernandez, 443 F.3d 19, 33 (2d Cir. 2006) (stating that a district may consider "non-5K" cooperation under § 3553(a)).

Under all of the circumstances, I found a sentence of 60 months sufficient but not greater than necessary. I noted that the sentence would have been the same regardless of my finding on the U.S.S.G. § 2D1.1(b)(1) objection. To the extent that this sentence varied from the guideline range, it created no unwarranted disparity. See 18 U.S.C. § 3553(a)(6). As the Supreme Court has held, given the flaws in the crack cocaine guideline identified by the

8

Sentencing Commission, the district court may conclude that the goal of eliminating disparity is better served by imposition of a non-guideline sentence in crack cases.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 60 months, with a recommendation that he participate in any substance abuse treatment and vocational training programs available. Upon release, I ordered him to serve four years of supervised release, with conditions including drug testing and treatment and repayment of the buy money expended in this case. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 29th day of October, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge